UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN ALLEN DAVEY,

                    Plaintiff,

        v.

PIERCE COUNTY COUNCIL, et al.,

                    Defendant.

Case No. C21-05068-LK-SKV

REPORT AND RECOMMENDATION

Plaintiff, Justin Allen Davey, proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. Plaintiff was a county detainee at Pierce County Jail at the time he commenced this action. *See* Dkts. 26, 53-2. Plaintiff's amended complaint challenges the constitutionality of the conditions of his confinement while he was detained at Pierce County Jail for approximately seven months, beginning in or around May of 2020. Dkt. 26. Currently pending before the Court are Defendants' motion to dismiss the amended complaint and to change venue (Dkts. 33, 47), and Plaintiff's motion for leave to file a second amended complaint (Dkt. 53). Plaintiff opposes Defendants' motion to dismiss (Dkts. 39), and Defendants oppose Plaintiff's motion to amend (Dkt. 60).

1    The Court has considered Defendants' motion to dismiss together with and in light of

2    Plaintiff's motion to amend and the proposed second amended complaint and has considered all

3    of the briefing submitted with respect to the motions and the balance of the record. Having done

4    so, the Court recommends that Defendants' motion to dismiss (Dkts. 33, 47) and Plaintiff's

5    motion for leave to file a second amended complaint (Dkt. 53) be granted in part and denied in

6    part and that Defendants' motion to change venue (Dkt. 30) be denied.

7    <u>BACKGROUND</u>

8    Plaintiff commenced this action on or about January 25, 2021. Dkt. 1. In his amended

9    complaint filed April 20, 2021, Plaintiff alleges that plumbing and sewer conditions in his unit

10   (Mental Health Unit 3 North A) at Pierce County Jail caused sewage backups in the toilets in his

11   cells and ongoing serious sanitation issues. Dkt. 26. Plaintiff's amended complaint indicates that

12   he was a pretrial detainee at the time of the events giving rise to his claims and alleges that the

13   conditions of confinement at the Jail violated his Fourteenth Amendment due process rights. *Id.* at

14   11-12. Plaintiff's amended complaint names as Defendants: Pierce County/Pierce County Council;

15   Ed Troyer, Sheriff of Pierce County; Patti Jackson, Chief of the Internal Operation of the Pierce

16   County Sheriff Dept. Correction Bureau; B. Sutherlin, Captain Deputy Corrections Officer at the

17   Pierce County Sheriff's Department; Dobson, Lieutenant Deputy Corrections Officer at the Pierce

18   County Sheriff's Department; Mastandrea, Sergeant Deputy Corrections Officer at the Pierce

19   County Sheriff's Department; D. Herbison, Sergeant Deputy Corrections Officer at the Pierce

20   County Sheriff's Department; and, T. Pearson, Deputy Corrections Officer at the Pierce County

21   Sheriff's Department.[1] Dkt. 26, at 4-10. Plaintiff names all non-entity Defendants in their

22   individual and official capacities. *Id.*

23

---

[1] Defendants' motion to dismiss identifies the full names of several of the Defendants as Brian Sutherlin, Matthew Dobson, Anthony Mastandrea, Darryl Herbison, and Torvald Pearson. *See* Dkt. 33.

REPORT AND RECOMMENDATION - 2

Defendants moved to dismiss Plaintiff's amended complaint arguing primarily that Plaintiff failed to allege sufficient facts to state a claim against the Defendants under either the Eighth or Fourteenth Amendment standard based upon the conditions of his confinement at the Jail.[2] Dkts. 33, 47. Defendants also alternatively moved to change venue. Dkt. 33. Plaintiff subsequently moved to amend his complaint. Dkt. 53. Plaintiff's proposed second amended complaint includes additional facts in support of his existing claims as well as new claims alleging negligence under Washington state law, violation of the Washington State Constitution, and violation of the Eighth Amendment during the period of a few days when Plaintiff's status had changed to that of a post-conviction prisoner. Dkt. 53-2. Defendants oppose Plaintiff's motion to amend on the grounds that the amendment is futile, arguing that Plaintiff's proposed second amended complaint still fails to state a claim. Dkts. 55, 60. Defendants primarily rely on the same arguments they advance in their motion to dismiss, which highlight alleged deficiencies in the factual allegations in Plaintiff's amended complaint and argue that Plaintiff's proposed second amended complaint fails to cure those deficiencies. *Id.*

In the proposed second amended complaint, Plaintiff names the same Defendants but, as noted, includes additional facts and claims. Dkt. 53-2. Plaintiff again names all non-entity Defendants in their individual and official capacities. *Id.* He also clarifies that he was a pretrial detainee during the vast majority of the period at issue, from May 12, 2020 to March 12, 2021, and a post-conviction prisoner from March 12, 2021 to March 16, 2021. *Id.* Plaintiff alleges that

---

[2] As discussed below, the Eighth Amendment prohibits the cruel and unusual punishment of *prisoners*, while the punishment of *pretrial detainees* is prohibited by the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). The Court notes that Defendants' original motion to dismiss largely addressed Plaintiff's claims under the Eighth Amendment standard. *See* Dkt. 33. Accordingly, at the Court's direction, Defendants submitted additional briefing addressing Plaintiff's claims under the Fourteenth Amendment standard in light of Plaintiff's apparent status as a pretrial detainee during the majority of the period in question. *See* Dkts. 44, 47.

REPORT AND RECOMMENDATION - 3

1    on May 12, 2020, he was reclassified from Level 2 Mental Health Housing unit to Level 3

2    Mental Health Housing Unit (3 North A), which he indicates is a place where mentally ill

3    detainees are placed mostly while awaiting competency evaluations. *Id.* at 10. He alleges when

4    he arrived his cell was in a "dangerous" condition in that there was human waste on the toilet

5    seat, vomit, spit, mucus on floor, and the stench of feces and urine. *Id.* He indicates he was

6    given a spray bottle but no PPE (personal protective equipment) and denied a change of clothes

7    when bodily waste splashed on his clothes and on his hands and that he was forced to wear those

8    same clothes for two days. *Id.* Plaintiff alleges on May 13, 2020, he noticed his toilet was full of

9    human waste and that the surrounding area on the floor had splashes of human waste and that he

10    immediately felt sick and was unable to eat his breakfast. *Id.* He indicates he requested cleaning

11    supplies but was denied and informed cleaning supplies were handed out during graveyard hours

12    and that he was forced to use his T-shirt to clean the area. *Id.* He also states he noticed urine and

13    feces backfilling into the cell toilet from the cell next to his. *Id.*, at 11. He states that every time

14    the adjoining cell toilet flushed, raw sewage would back up and nearly overflow splashing onto

15    the wall and floors, and that this occurred 10-15 times daily. *Id.*

16          Plaintiff alleges that on May 13, 2020, there was a "formal inspection" which he indicates

17    occurred every three weeks and was a day when different ranking officers (Captain, Lieutenant,

18    and Sergeant) would come to the unit to make sure the facility was working and was also an

19    opportunity for inmates to verbally communicate direct problems with higher ranking officers.

20    *Id.* At the May 13 formal inspection, Plaintiff indicates he told the "Captain" and "Lieutenant"[3]

21    about the condition of his cell the previous day and showed them that the "bodily fluids" were

22

23    [3] Plaintiff does not specifically identify the Captain and Lieutenant here by name but, construing Plaintiff's second amended complaint liberally, and based upon later references to the "Captain" and "Lieutenant", the Court interprets Plaintiff's complaint to refer here to Defendants Captain Sutherlin and Lieutenant Dobson.

1   not leaving the unit and that when the toilet flushed in the adjoining cell the waste would back up

2   into his cell toilet.  *Id.*  He indicates that the Captain and Lieutenant took notes and said they

3   would call and check on the issue but that, apparently, they did not do so because maintenance

4   did not come.  *Id.*

5       Plaintiff alleges that thereafter nearly every day Jail cluster officers denied him cleaning

6   supplies and PPE to clean contaminated areas after his toilet backfilled in his cell and that he was

7   left to clean with his own T-shirts and sink water.  *Id.*  Plaintiff indicates he asked mental health

8   social workers to move him due to increased psychiatric problems including hallucinations,

9   anxiety and fear of contracting disease but that he was mostly ignored and told it was "an old

10  building."  *Id.*

11      Plaintiff alleges that on May 18, 2020, he was moved to cell 25 where he found the toilet

12  saturated with feces and urine and the stench of sitting urine and feces.  *Id.*  He claims he was

13  again denied cleaning supplies by officers and forced to use his own clothes to clean areas.  *Id.* at

14  12.  He indicates that although he was placed in difference cells in 3 North A he experienced the

15  same constant sewage backup issues in every cell.  *Id.*  Plaintiff further claims the unit itself was

16  saturated from the stench and fumes of raw sewage exploding out of 10 sewage drainage pipes

17  next to the cell doors causing himself and other residents to endure constant headaches,

18  vomiting, diarrhea, and inability to eat.  *Id.*

19      Plaintiff indicates that on the next formal inspection day, June 3, 2020, he and several

20  other residents again informed Defendants Sutherlin, Dobson, and Pearson about the sewer

21  situation.  *Id.*  He indicates he pleaded with these Defendants to fix the plumbing, informing

22  them that every time the toilet in a connected cell flushed the bodily waste would back up into

23  his toilet and splash everywhere and at times overflow and that he was denied cleaning supplies

1    and left to clean with his T-shirt.  *Id.*  He indicates he informed them that every night waste

2    would back up into the toilets and often overflow onto his cell floor and that he was forced to eat

3    under these conditions.  *Id.*  Plaintiff also explained that when using the toilet, the waste from

4    other prisoners would splash up onto him.  *Id.*  Plaintiff informed these Defendants that he

5    believed that these conditions created a substantial risk of infectious, illness and disease and that

6    the conditions were making him sick and exacerbating his mental illness.  *Id.*  Plaintiff indicates

7    that Defendants' only response was that this was a "30-year mistake" and that Pierce County

8    wouldn't pay for the issue to be fixed so the unit would "just have to deal with it."  *Id.*  He

9    indicates that when he complained about staff not giving him cleaning supplies, the Defendants

10   laughed at him and ignored him.  *Id.*  Plaintiff indicates he and other residents requested

11   grievances but were denied by cluster officers and told the issue wasn't grievable because the

12   Jail was already aware of the issue. *Id.* at 13.

13          On June 16, 2020, Plaintiff indicates he filed a grievance (#530524) under "staff

14   treatment of inmates," because he was not permitted to grieve about not receiving cleaning

15   supplies or plumbing issues.  *Id.*  The grievance related to the refusal of an Officer ("Olsen") to

16   provide Plaintiff with adequate cleaning supplies, specifically a rag, to clean his cell.  *Id.*

17   Plaintiff alleges that when sewage splashes on the floor and residents of the unit are denied

18   cleaning supplies, they are forced to walk on contaminated floors with just socks and slippers

19   and thereafter pass the sewage from their socks to their beds.  *Id.*  Plaintiff indicates that from

20   May 12, 2020, to June 18, 2020, he complained about the conditions of the unit daily to cluster

21   officers, also noting the presence of insects coming from the sewage drainpipes, and that he was

22   told by the officers that they weren't plumbers and couldn't solve the issue. *Id.*  Plaintiff

23

1    indicates that during this same period he was only supplied any form of cleaning supplies on two

2    occasions.  *Id.*

3          Plaintiff indicates that on June 18, 2020, he was transferred to competency restoration

4    services and on September 15, 2020, was transferred back to Pierce County Jail.  *Id.*  He

5    indicates on September 16, 2020, he was transferred back to 3 North A and placed in cell 10-11

6    where he experienced the same issue of sewage backing up into the cell and was again denied

7    cleaning supplies.  *Id.*  He alleges these same issues continued thereafter.  *Id.* at 14.  Plaintiff

8    alleges he was transferred to cell 18 at some point by mental health social workers and that

9    during their weekly visits he informed them that he woke up feeling dizzy and not well every

10   morning because of the plumbing issue.  *Id.*  He indicates the social workers blamed his

11   symptoms on his medications but notes he had not experienced these symptoms while on the

12   same medications and detained at a different facility for restoration services.  *Id.*

13         Plaintiff indicates that at formal inspection on October 7, 2020, he complained again of

14   the conditions to Defendants Sutherlin, Dobson, Pearson, and this time also to Defendant

15   Mastandrea, explaining that the sewage and foul odor were making them sick, and mosquitos and

16   flies were coming from the sewage drains.  *Id.*  Plaintiff indicates that the Defendants responded

17   that Pierce County and the Jail were aware of the issue, that it was the way the plumbing was

18   designed and would not be fixed at that time, and that Plaintiff would just have to deal with it.

19   *Id.*  Plaintiff indicates the conditions persisted and that he and other residents were continually

20   denied requests for grievances.  *Id.* at 15.

21         Plaintiff indicates that at formal inspection on October 28, 2020, he again informed

22   Defendants Sutherlin, Dobson, and Pearson of the conditions and complained of being exposed

23   to raw sewage.  *Id.*  Plaintiff states that Defendants again ignored his complaints and that

Defendant Pearson told him the building was "old" and that if he didn't like being there, he should "stop coming to jail." *Id.*

Plaintiff indicates that at formal inspection on November 18, 2020, before he could complain, Defendants Sutherlin, Dobson, and Pearson told the unit that if anyone brought up issues that had already been discussed that disciplinary action would be taken and again told unit residents that they were aware of the plumbing issues and that it was a construction issue and wouldn't be addressed at that time. *Id.* Plaintiff indicates that Defendants also informed the unit that cleaning supplies were not a policy but a privilege for the cluster officers to give at their disposal. *Id.* Plaintiff further alleges that he was also informed on another occasion that Pierce County had no specific policy requiring the provision of cleaning supplies to inmates. *Id.*

Plaintiff states that on December 13, 2020, a new officer to the unit, Officer Erwin, provided Plaintiff with cleaning supplies and suggested he kite the duty sergeant if he wanted a grievance. *Id.* at 16. Plaintiff indicates on December 14, 2020, he submitted a kite asking for a grievance to submit regarding the unsafe environment caused by the sewer. *Id.* He states that corrections officer Starks and Defendant Herbison came and asked what the problem was, and he informed them about the toilets overflowing, denial of cleaning supplies and the constant odor of raw sewage. *Id.* Plaintiff indicates that later that day corrections officer Starks told Plaintiff to dump buckets of water down the sewer pipes closets. *Id.* Plaintiff indicates that while he was dumping water, he noticed dead mice in mouse traps in two of the drainage pipes. *Id.* Plaintiff also indicates that the practice of dumping water down the drains "doesn't work." *Id.* at 22. He indicates that on December 15, 2020, he received a response to his kite from Defendant Herbison saying that "Officers are researching the issues. The deputies report 'Nothing Unusual.'" *Id.* at 16. Plaintiff indicates he was denied a grievance. *Id.*

Plaintiff indicates he again requested a grievance to a different duty sergeant and this time was issued a grievance by Sergeant Ake. *Id.* at 17. Plaintiff also alleges that he filed a grievance dated December 16, 2020, in which he raised the following issues: his health concern about the unit toilets; that he had raised the issue at the last four inspections; that the toilets shoot out other inmate's feces; that he has to eat in his cell with other people's fecal matter splattered all over the toilet; that there is a smell throughout the whole unit; that he is forced to clean contaminated areas without proper PPE; being forced to wait hours for cleaning supplies; that inmates threaten each other (including himself) because of the plumbing; and requests that the unit residents be moved until the conditions are made compatible with living. *Id.*

Plaintiff indicates on December 18, 2020, a plumber named "Jason" came and snaked the toilets and told Plaintiff the toilet wasn't clogged. *Id.* Plaintiff states he explained the issue of the toilets backflowing and overflowing into the cell and "Jason" acknowledged the issue but said it was a "shitty situation" and in order to fix it they would have to reconstruct the plumbing and that Pierce County would not fund it. *Id.* Plaintiff indicates that later that day he received a response to his grievance from Defendant Mastandrea stating that maintenance checked and snaked the toilets and that he had spoken to Plaintiff who indicated he was satisfied with maintenance's response and explanation. *Id.* at 18. Plaintiff indicates he never spoke to Defendant Mastandrea and never said he was "satisfied" with the response. *Id.* Plaintiff indicates he filed an appeal indicating he had never spoken to Defendant Mastandrea, that he was not satisfied with the response, and also complaining that there was not response to his complaints about lack of cleaning supplies or the odors causing physical illness. *Id.* Plaintiff states that after handing his appeal to the cluster officer it was "never seen again" indicating it was either lost in the transfer or purposely rejected. *Id.*

1      In January 2021, Plaintiff indicates he sent medical kites asking to be checked medically

2  due to the exposure to raw sewage but medical staff responded there was "no medical indication

3  for this request." *Id.* at 19.  On January 14, 2021, Plaintiff indicates he was hired as his Units

4  "unit worker" and was told he would be given cleaning supplies at 9 p.m. to clean the day room

5  and shower.  *Id.*  Plaintiff states he would hide some of the cleaning disinfectant he received in

6  order to clean his own cell." *Id.*

7      Plaintiff indicates that at the end of January 2021, he sent kites asking why the appeal of

8  his grievance had not been heard.  *Id.*  He indicates on February 2, 2021, he received a response

9  from Captain Ganga indicating that his office had never received Plaintiff's appeal.  *Id.*  Plaintiff

10  states on February 3, 2021, the Jail went into mandatory quarantine status and residents of the

11  unit were stuck in their contaminated cells for four days.  *Id.*  at 20.  Plaintiff indicates on

12  February 6, 2021, an officer read his § 1983 complaint and made copies of it.  *Id.*  He states on

13  February 7, 2021, Sergeant Ake and Defendant Mastandrea came and asked Plaintiff what was

14  "going on", which he believed to be a reference to his § 1983 complaint.  *Id.*  Plaintiff indicates

15  he repeated his complaints about the conditions.  *Id.*  On February 10, 2021, Captain Genga came

16  to the unit and Plaintiff informed him of the ongoing plumbing issues and denial of cleaning

17  supplies.  *Id.* at 21.  Plaintiff alleges Captain Genga indicated he would contact maintenance and

18  that he would have a staff meeting about getting cleaning supplies to the residents when needed.

19  *Id.*

20      On February 11, 2021, Sergeant Smith brought an email to 3 North A Cluster Officers

21  that had Chief Patti Jackson's name on it.  *Id.*  Plaintiff indicates the email discussed what

22  officers were to do and said "make sure officers flushed the toilets of empty cells." *Id.*  Plaintiff

23  indicates between February 2, 2021, and March 16, 2021, the officers did not adhere to

REPORT AND RECOMMENDATION - 10

1   Defendant Jackson's email and cleaning supplies were withheld due to Covid mandatory

2   lockdown status. *Id.* Plaintiff indicates on March 11, 2021, another unit resident requested a

3   grievance and Sergeant Miller came to ask what the problem was. *Id.* at 22. Plaintiff indicates

4   he and the other unit resident showed Sergeant Miller the issue of the backfilling toilets. *Id.*

5   When the other unit resident asked for a grievance Sergeant Miller indicated he would contact

6   maintenance first. *Id.*

7        Plaintiff's proposed second amended complaint alleges violations of the Eighth and

8   Fourteenth Amendment of the United States Constitution, the Due Process Clause of the

9   Washington State Constitution, as well as Washington state law claims of negligence and

10  "ministerial negligence." *Id.* 25-26.

11       As relief, Plaintiff seeks declaratory and injunctive relief as well as actual, compensatory

12  and punitive damages, costs, and any additional relief the Court deems just, proper and equitable.

13  *Id.* at 27.

14                              DISCUSSION

15  A.    Motion to Dismiss and Motion to Amend

16        1.    *Relevant Legal Standards*

17              a.    *Motion to Dismiss*

18        A motion to dismiss can be granted only if Plaintiff's complaint, with all factual

19  allegations accepted as true, fails to "raise a right to relief above the speculative level[.]" *Bell*

20  *Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

21        To survive a motion to dismiss, a complaint must contain sufficient factual matter,
          accepted as true, to "state a claim to relief that is plausible on its face." A claim has

22        facial plausibility when the plaintiff pleads factual content that allows the court to
          draw the reasonable inference that the defendant is liable for the misconduct alleged.
          The plausibility standard is not akin to a probability requirement, but it asks for more

23        than a sheer possibility that a defendant has acted unlawfully.

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

2        A complaint must contain a "short and plain statement of the claim showing that the

3    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the

4    statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

5    which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

6    However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

7    accusation." *Iqbal*, 556 U.S. at 678.  The Court does not have to accept a "legal conclusion

8    couched as a factual allegation." *Id.*  "Threadbare recitals of the elements of a cause of action,

9    supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development*

10   *Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported

11   by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th

12   Cir. 1992).

13       When ruling on a motion to dismiss, the court "accept[s] all factual allegations in the

14   complaint as true and constru[es] them in the light most favorable to

15   the nonmoving party." *Fields v. Twitter*, 881 F.3d 739, 743 (9th Cir. 2018).  Furthermore, in

16   general, pro se pleadings are held to a less stringent standard than those drafted by attorneys and

17   the court is obligated, particularly in civil rights cases, to construe such pleadings liberally and

18   afford the pro se party any benefit of the doubt.  *See Garmon v. County of Los Angeles*, 828 F.3d

19   837, 846 (9th Cir. 2016); *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).

20   That said, the court's liberal construction of a pro se complaint may not supply essential

21   elements of the claim that were not pled.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266,

22   268 (9th Cir. 1982).

23

1

2

### b.    Motion to Amend

3    Pursuant to Fed. R. Civ. P. 15(a), at this point in the litigation, a Plaintiff "may amend

4    [his] pleading only by leave of the court or by written consent of the adverse party; and leave

5    shall be freely given when justice so requires."  In determining whether to allow an amendment

6    to a complaint Courts consider the following factors: "the presence or absence of undue delay,

7    bad faith, dilatory motive, undue prejudice to the opposing party, and futility of the proposed

8    amendment."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

9    "Prejudice is the touchstone of the inquiry under rule 15(a) ... Absent prejudice, or a

10   strong showing of any of the remaining [above] factors, there exists a *presumption* under Rule

11   15(a) in favor of granting leave to amend."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

12   1048, 1052 (9th Cir. 2003) (internal quotation marks and citation omitted).

13   "The party opposing [the] amendment bears the burden of showing prejudice, unfair delay, bad

14   faith, or futility of amendment."  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied*

15   *Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 2009 WL 650730, at

16   *2 (C.D. Cal. Mar. 12, 2009) (citing *Eminence Capital*, 316 F.3d at 1052; *DCD Programs, Ltd.*

17   *v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).  Undue delay alone is generally insufficient

18   to justify denying a motion to amend under Rule 15.  *See Bowles v. Reade*, 198 F.3d 752, 758

19   (9th Cir. 1999).  Further, "[a] proposed amendment is futile only if no set of facts can be proved

20   under the amendment to the pleading that would constitute a valid and sufficient claim or

21   defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (abrogated on other

22   grounds by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

23

1

2          c.      Conditions of Confinement - Eighth Amendment

3          The Eighth Amendment's prohibition against cruel and unusual punishment protects

4  prisoners from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041,

5  1045 (9th Cir. 2006).  Prison officials therefore have a "duty to ensure that prisoners are

6  provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."

7  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  To establish a violation

8  of this duty, a prisoner must show that he was subjected to an objectively serious deprivation that

9  amounts to a denial of "the minimal civilized measure of life's necessities."  *Farmer v. Brennan*,

10  511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  A prisoner

11  must also show that prison officials acted with sufficiently culpable states of mind in failing to

12  satisfy their duties.  *Id.*  Prison officials must have acted with deliberate indifference.  *Id.*  A

13  prison official is liable under the Eighth Amendment only if he or she "knows of and disregards

14  an excessive risk to inmate health or safety; the official must both be aware of facts from which

15  the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must

16  also draw the inference."  *Id.* at 837

17          d.      Conditions of Confinement – Fourteenth Amendment

18          In contrast to post-conviction prisoners, pretrial detainees have the right to be free from

19  punishment under the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 533 (1979).  In

20  assessing conditions of confinement for pretrial detainees, the Court considers whether the

21  conditions amount to punishment, causing harm or disability significantly exceeding or

22  independent of the inherent discomforts of confinement, or whether they merely result from

23  some legitimate governmental purpose.  *See Doe v. Kelly*, 878 F.3d 710, 714, 720 (9th Cir.

2017).  The Court evaluates a pretrial detainee's Fourteenth Amendment claim under an objective deliberate indifference standard.  *See Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (applying objective standard to medical care claims and describing similar treatment afforded medical care and other conditions of confinement claims) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015), and *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 831, 97 L. Ed. 2d 69 (2017)).[4]

A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Kingsley*, 576 U.S. at 398.  The elements of a pretrial detainee's claim against an individual defendant under the objective deliberate indifference standard are as follows:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular

---

[4] Previously, "all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010)). Although the Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims beyond a denial of medical care, failure-to-protect, and excessive force claims, the decision in *Gordon* strongly suggests it will do so. *See Gordon*, 888 F.3d at 1120, 1124, and 1124 n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)).

case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted sources omitted)).  The Ninth Circuit has

explained that the objective deliberate indifference standard,

> differs from the inquiry under the Eighth Amendment which requires that the "prison official must *subjectively* have a sufficiently culpable state of mind." *Id*. at 1070–71 (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002) (emphasis in original)). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Estate of Ford*, 301 F.3d at 1050 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). By contrast "a pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk." *Castro*, 833 F.3d at 1071.

*Gordon*, 888 F.3d at 1125, n. 4.

  2.  Analysis
      a.  *Individual Capacity Federal Claims Against Defendants Sutherlin,*
          *Dobson, Herbison, Pearson, and Mastandrea*

    The Court finds that, whether analyzed under the Eighth Amendment or Fourteenth

Amendment standard, Plaintiff has set forth sufficient factual allegations in his proposed second

amended complaint to state a federal constitutional claim against Defendants Sutherlin, Dobson,

Herbison, Pearson, and Mastandrea in their individual capacities based upon the conditions of his

confinement.  The Court notes that while it appears the claims in Plaintiff's amended complaint

were sufficient, even assuming some of those claims were insufficient, Defendants have failed to

demonstrate that Plaintiff has failed to state a claim in his proposed second amended complaint,

or that amendment of the complaint is futile.[5]

    The Eighth Amendment requires that prisoners be provided with "adequate shelter, food,

clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis,* 217 F.3d 726, 731

(9th Cir. 2000).  "The circumstances, nature, and duration of a deprivation of [ ] necessities must

---

[5] The Court notes that Defendants do not appear to argue that any of the other factors support denial of the motion to amend, nor does the Court find that these other factors (undue delay, bad faith, dilatory motive, or undue prejudice) would support denial of leave to amend here.

be considered in determining whether a constitutional violation has occurred." *Id.*  The length of time a prisoner is subjected to the offensive condition, is a relevant factor to consider in determining whether it implicates constitutional protections.  *See Hutto v. Finney,* 437 U.S. 678, 686–87, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Cockcroft v. Kirkland*, 548 F.Supp.2d 767, 775 (N.D. Cal., March 10, 2018) ("Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time.").  "Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern,* 45 F.3d 1310, 1314–15 (9th Cir. 1995).  "The failure to provide adequate cell cleaning supplies may also amount to unconstitutional punishment where that failure 'seriously threatens' the inmate's health." *Moak v. Sacramento Cty.*, No. 215CV0640MCEKJNP, 2016 WL 393860, at *3 (E.D. Cal. Feb. 2, 2016), *report and recommendation adopted*, No. 215CV0640MCEKJNP, 2016 WL 8731337 (E.D. Cal. Mar. 4, 2016); *Hoptowit v. Spellman*, 753 F.3d 779, 783-85 (9th Cir. 1985) ("Failure to provide adequate cell cleaning supplies, under circumstances [presented in the case], deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment.").

"Longstanding conditions involving backflushing and the denial of cleaning supplies to sanitize the area contaminated by waste water" have been found to "violate the Eighth Amendment." *Bodnar v. Riverside Cty. Sheriff's Dep't*, No. EDCV 11-291-DSF OP, 2014 WL 2737815, at *7 (C.D. Cal. Mar. 28, 2014), *report and recommendation adopted*, No. EDCV 11-

291-DSF OP, 2014 WL 2741070 (C.D. Cal. June 16, 2014) (Denying summary judgment to defendants on Plaintiff's Eighth Amendment conditions of confinement claim where there was evidence Plaintiff was subject to ongoing backflushing problem for eight to twelve months where waste water would often splash onto rim of toilet and onto floor and he and other inmates were regularly denied cleaning supplies); *Cockcroft,* 548 F.Supp.2d at 774–76 (Denying defendants' motion to dismiss Plaintiff's Eighth Amendment claim where Plaintiff alleged he was subjected to ongoing backflushing problem for two years where waste water would rise up in toilet when toilet in adjoining cell was flushed, he was denied regular cleaning supplies, and he contracted an infection from the backflushing).  Moreover, under circumstances where "the air [is] in fact saturated with the fumes of feces, urine, and vomit, it could undermine health and sanitation."  *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998).

        In his proposed second amended complaint, Plaintiff alleges that he was exposed to human waste backflowing into his toilet 10-15 times per day over an extended period of time (approximately seven months), that the human waste frequently also overflowed the toilet and spilled onto the floor of his cell, and that when using the toilet, the waste from other prisoners would regularly splash up onto the Plaintiff's body.  He also alleges that, with a few exceptions, he was consistently denied cleaning supplies and that he was left to try to clean the area with his T-shirt.  He alleges he and other residents were forced to walk on contaminated floors with just socks and slippers and would thereafter pass the sewage from their socks to their beds.  He alleges the unit itself was saturated from the stench and fumes of raw sewage exploding out of ten sewage drainage pipes next to the cell doors, mosquitos and flies were seen coming from the sewage drains, and on one occasion dead mice were observed in the drainage pipes.  He alleges

the constant odor of raw sewage caused himself and other residents to endure constant

headaches, vomiting, diarrhea, inability to eat, that the conditions caused deterioration in his

mental health, and that the regular exposure to human waste placed him at risk of contracting

disease.

Defendants argue that Plaintiff cannot state a claim because he concedes he was given

cleaning supplies on request and the conditions he describes are not sufficiently severe to violate

the constitution.  Dkts. 33, 47.  The Court disagrees.  Plaintiff's complaint makes clear that he

only received cleaning supplies on a few occasions over the course of seven months, that the

cleaning supplies provided were inadequate, and that the provision of these supplies on these

occasions was an exception to the regular custom or practice of denying cleaning supplies.

Construing the allegations of the complaint in the light most favorable to the Plaintiff, the Court

concludes that Plaintiff has sufficiently alleged that he was subjected to an objectively serious

deprivation that amounts to a denial of "the minimal civilized measure of life's necessities" for

purposes of stating a claim under even the Eighth Amendment standard.  He has also adequately

alleged that the conditions were sufficiently serious to place him at substantial risk of serious

harm, subjecting him to harm or disability significantly exceeding or independent of the inherent

discomforts of confinement not rationally related to a legitimate governmental objective, for

purposes of stating a claim under the Fourteenth Amendment.

Plaintiff's proposed second amended complaint with respect to Defendants Sutherlin,

Dobson, Herbison, Pearson, and Mastandrea also alleges sufficient facts to support a claim that

these Defendants acted with deliberate indifference, whether analyzed under the subjective

Eighth Amendment standard or the objective Fourteenth Amendment standard.

1     With respect to Defendants Sutherlin and Dobson, Plaintiff alleges he informed them of

2   the conditions during formal inspections on four occasions over the course of several months.

3   Plaintiff also informed Defendant Pearson of the conditions at three of the of those formal

4   inspections.  Plaintiff also alleges he informed these Defendants that he was being denied

5   cleaning supplies.  His allegations indicate these Defendants took no action to address the issues

6   and in fact called the issue a "30-year mistake" informing Plaintiff that Pierce County wouldn't

7   pay to address the issue so he would "just have to deal with it."  Dkt. 53-2, at 12.  Plaintiff also

8   alleges that at a subsequent formal inspection, these Defendants refused to allow Plaintiff to

9   express his concerns about the plumbing issue, informed Plaintiff and other unit residents that

10   Defendants were aware of the issue, that it was a construction issue that would not be addressed

11   at that time, and that if anyone brought up the issue again disciplinary action would be taken.

12   Dkt. 53-2, at 15.  These allegations are sufficient to support a claim that these Defendants knew

13   of and disregarded an excessive risk to inmate health or safety for purposes of the Eight

14   Amendment and, by extension, are also sufficient to meet the objective deliberate indifference

15   standard under the Fourteenth Amendment.  *See, e.g., Fruit v. Norris*, 905 F.2d 1147, 1150–51

16   (8th Cir. 1990) ("'common sense' suggests that [prison officials] should have had knowledge

17   that unprotected contact with human waste could cause disease.") (internal citations omitted).

18     With respect to Defendant D. Herbison, Plaintiff alleges that corrections officer Starks

19   and Defendant Herbison came to his cell in response to his kite requesting a grievance regarding

20   the unsafe environment caused by the sewer.  Plaintiff informed them about the toilets

21   overflowing, denial of cleaning supplies and constant odor of raw sewage and indicates that later

22   that day corrections officer Starks told Plaintiff to dump buckets of water down the sewer pipes

23   closets, a practice Plaintiff indicates does not resolve the problem.  Plaintiff indicates he received

a response to his kite from Defendant Herbison saying that "Officers are researching the issues. The deputies report 'Nothing Unusual.'" and that he was never provided a grievance.  Viewing these allegations in the light most favorable to Plaintiff, given Plaintiff's complaints about the severity of the ongoing sewer issue, the denial of cleaning supplies, and Plaintiff's assertion that dumping water down the sewers did nothing to resolve the issue, it is reasonable to infer that Defendant Herbison's response to the kite that the deputies report "nothing unusual", reflects a decision to simply ignore or avoid the issue.  These allegations are sufficient to support a claim that Defendant Herbison knew of and disregarded an excessive risk to inmate health or safety for purposes of the Eight Amendment and, by extension, are also sufficient to meet the objective deliberate indifference standard under the Fourteenth Amendment.

With respect to Defendant Mastandrea, Plaintiff alleges he informed him of the conditions at the October 7, 2020, formal inspection along with Defendants Sutherlin, Dobson and Pearson, and received the response from those Defendants that Pierce County and the Jail were aware of the issue, that it was the way the plumbing was designed and would not be fixed at that time, and Plaintiff would just have to deal with it.  Dkt. 53-2 at 14.  Plaintiff also alleges that he filed a grievance dated December 16, 2020, in which he raised the following issues: his health concern about the unit toilets; that he had raised the issue at the last four inspections; that the toilets shoot out other inmate's feces; that he has to eat in his cell with other people's fecal matter splattered all over the toilet; that there is a smell throughout the whole unit; that he is forced to clean contaminated areas without proper PPE; being forced to wait hours for cleaning supplies; that inmates threaten each other (including himself) because of the plumbing; and requests that the unit residents be moved until the conditions are made compatible with living. Dkt. 53-12 at 17.

1    Plaintiff indicates that thereafter, on December 18, 2020, a plumber named "Jason" came

2    and snaked the toilets and told Plaintiff the toilet wasn't clogged.  *Id.*  Plaintiff states he

3    explained the issue of the toilets backflushing and overflowing into the cell and that "Jason"

4    acknowledged the issue but said it was a "shitty situation" but in order to fix it they would have

5    to reconstruct the plumbing and that Pierce County would not fund it.  *Id.*  Plaintiff indicates

6    later that day he received a response to his grievance from Defendant Mastandrea stating that

7    maintenance checked and snaked the toilets and that he had spoken to Plaintiff who indicated he

8    was satisfied with maintenance's response and explanation.  *Id.* at 18.  But Plaintiff indicates he

9    never spoke to Defendant Mastandrea and never said he was "satisfied" with the response.  *Id.*

10    Plaintiff also indicates he filed an appeal indicating he had never spoken to Defendant

11    Mastandrea, that he was not satisfied with the response, and also complaining that there was no

12    response to his complaints about lack of cleaning supplies or the odors causing physical illness.

13    *Id.*  Plaintiff states that after handing his appeal to the cluster officer it was "never seen again"

14    indicating it was either lost in the transfer or purposely rejected.  *Id.*

15    Construing the allegations of the proposed second amended complaint in the light most

16    favorable to Plaintiff, the Court finds Plaintiff has alleged sufficient facts to support a claim of

17    deliberate indifference against Defendant Mastandrea.  Plaintiff alleges Defendant Mastandrea

18    was present at the October 7, 2020, formal inspection where Plaintiff indicates he was informed

19    by the Jail officials present (namely Defendants Sutherlin, Dobson, Pearson and Mastandrea) that

20    Pierce County and the Jail were aware of the issue and that it was a structural issue with the

21    plumbing that would not be fixed at that time.  Based upon these allegations it can be reasonably

22    inferred that Defendant Mastandrea was already aware that the nature of the plumbing issue was

23    structural and not a clogged toilet that could be resolved by "snaking" it.  Furthermore, Plaintiff

alleges Defendant Mastandrea never actually spoke to him and Plaintiff never told him the issue

was resolved.  The Court finds it can be reasonably inferred from the allegations of the proposed

second amended complaint that Defendant Mastandrea knew that having the plumber snake the

toilets would not resolve the issue and thus his actions in sending a plumber were not a

legitimate effort to address the problem.  Furthermore, Defendant Mastandrea's alleged failure to

speak to Plaintiff after the fact but instead claiming he had done so and closing the grievance can

be reasonably interpreted as a decision to simply ignore the issue.  The Court also notes that it

appears Defendant Mastandrea never responded to Plaintiff's complaint regarding cleaning

supplies.  These allegations are sufficient to support a claim that Defendant Mastandrea knew of

and disregarded an excessive risk to inmate health or safety for purposes of the Eight

Amendment and, by extension, are also sufficient to meet the objective deliberate indifference

standard under the Fourteenth Amendment.

In sum, the Court finds that, whether analyzed under the Eighth Amendment or

Fourteenth Amendment standard, Plaintiff has sufficiently stated a claim in his proposed second

amended complaint against Defendants Sutherlin, Dobson, Herbison, Pearson, and Mastandrea

based upon the conditions of his confinement.  Accordingly, the Court recommends that, with

respect to the individual capacity federal claims against these Defendants, Defendants' motion to

dismiss should denied and Plaintiff's motion to amend should be granted.

> b.    *Individual Capacity Federal Claims Against Defendants Patti Jackson and Ed Troyer*

With respect to the individual capacity federal constitutional claims against Defendants

Patti Jackson and Ed Troyer, the Court finds that Defendants have shown that Plaintiff fails to

state a claim either in his amended complaint or his proposed second amended complaint

whether analyzed under the Eighth or Fourteenth Amendment standard.  As such, Defendants'

1   motion to dismiss should be granted and Plaintiff's motion to amend denied as futile with respect

2   to the individual capacity federal constitutional claims against Defendants Patti Jackson and Ed

3   Troyer.

4   　　　　In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

5   suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

6   the violation was proximately caused by a person acting under color of state law.  *See Crumpton*

7   *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The first step in a § 1983 claim is therefore to

8   identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266,

9   271 (1994).

10  　　　　To satisfy the second prong, a plaintiff must allege facts showing how individually

11  named defendants caused, or personally participated in causing, the harm alleged in the

12  complaint.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d

13  1350, 1355 (9th Cir. 1981).  A person subjects another to a deprivation of a constitutional right

14  when committing an affirmative act, participating in another's affirmative act, or omitting to

15  perform an act which is legally required.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

16  Sweeping conclusory allegations against an official are insufficient to state a claim for relief.  *Leer*,

17  844 F.2d at 633.  Further, a § 1983 suit cannot be based on vicarious liability alone, but must allege

18  the defendant's own conduct violated the plaintiff's civil rights.  *City of Canton v. Harris*, 489 U.S.

19  378, 385-90 (1989).  Thus, "[a] supervisor is only liable for the constitutional violations of …

20  subordinates if the supervisor participated in or directed the violations, or knew of the violations

21  and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations

22  omitted)

23

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement – and the liability – of that supervisor.  Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (holding that "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates").

Here, Plaintiff's individual capacity federal claims against Defendants Jackson and Troyer in both the amended complaint and proposed second amended complaint appear to be based primarily upon the theory of vicarious liability.  Specifically, Plaintiff alleges Defendant Troyer,

> [i]s and was the Sheriff of Pierce County, and in that Capacity is and was Responsible for establishing or Failing To Establish the Policies, Practices, and Regulations for the conduct of the Pierce County Sheriff Department and its Employees.
> Defendant … Troyer is and was Responsible for the hiring, training, supervision, discipline, and control of all members of the Pierce County Sheriff's department.
> Defendant County Sheriff is and was the Commanding Officer of the other Police personnel named herein as individual Defendants.
> […]
> Defendant County Sheriff has a Constitutional and Statutory responsibility for the Conditions and Practices of the Pierce County Jail Facility and … is responsible for maintaining the Jail facility in conformity with Constitutional requisites.  Defendant … is also Custodian of the Jail Facility, responsible for the Neglect and Omission of the duties of all Deputy Sheriffs and Corrections Officers, and Charged with Furnishing necessary Sanitation, Bedding, Clothing, Medical Aid, and Mental Health Social Workers for all persons detained in the Jail Facility.
> In addition, Defendant … is and was responsible for ensuring that the Deputy Sheriff and Corrections Officers of Pierce County Sheriff Dept. Obeyed regulations of the Pierce County Sheriff's Department, the Ordinance and Law of Pierce County, and the Laws and Constitution of the State of Washington and the United States.
> Defendant … is and was Responsible for the Establishment, Policies, Procedures and guidelines for the Arrest, Jailing and Safe Keeping of Pre-trial Detainees.

Dkt. 53-2, at 7.  Plaintiff alleges,

Defendant Jackson is and was the Chief of the Internal Operation of the Sheriff Dept. Correction Bureau, and in that Capacity, is and was Constitutionally and Statutorily responsible also for the Training, Supervision, Discipline, and Control of all Deputy Correction Officers, as well as the Operation, Practices, and Totality of Conditions of the Pierce County Jail Facility. Defendant Chief has Statutory Responsibility also for ensuring that the Pierce County Jail Facility conforms to the requirements of State Law, and the Laws and Constitution of the United States. In addition, defendant Chief is and was Responsible for the establishment of Policies, procedures, and Guidelines for the Arrest, Jailing, and Safe Keeping of Pre-Trial detainees housed in the Pierce County Jail Facility.

Dkt. 53-2, at 8.

Plaintiff fails to allege sufficient facts to show Defendants Troyer and Jackson were personally aware of the plumbing and sewer issue or what specific actions or inactions by these Defendants constituted deliberate indifference. With respect to Defendant Jackson, Plaintiff does allude to the existence of an email with her name on it that discussed flushing the toilets in the empty cells in the unit. But Plaintiff provides no facts to indicate what issue the instruction in the email was intended to address, or to indicate that Defendant Jackson was personally aware of the nature or extent of the conditions Plaintiff alleges in his proposed second amended complaint. As such, Plaintiff's conclusory allegations are insufficient to show these Defendants personally participated in the alleged constitutional violations. *See Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims).

Accordingly, the Court recommends that, with respect to the individual capacity federal claims against Defendants Troyer and Jackson, Defendants' motion to dismiss should granted, Plaintiff's motion to amend should be denied, and these claims should be dismissed without prejudice.

c.    *Federal Claims Against Pierce County*

With respect to Defendant Pierce County, Plaintiff alleges he was informed repeatedly by Jail officials, including several of the individual Defendants, that Pierce County was aware of the

plumbing conditions at the Jail and that they would not be fixing anything at that time.  The Court finds that, whether analyzed under the Eighth Amendment or Fourteenth Amendment standard, Plaintiff has set forth sufficient factual allegations in his proposed second amended complaint to state a claim against Defendant Pierce County, based upon the conditions of his confinement.  The Court notes that while it appears the claims in Plaintiff's amended complaint against Defendant Pierce County were sufficient, even assuming some of those claims were insufficient, Defendants have failed to demonstrate that Plaintiff has failed to state a claim in his proposed second amended complaint, or that amendment of the complaint is futile.[6]

A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability.  *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "To [prevail on a claim against a municipal entity for a constitutional violation], a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit."  *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc).  Municipal liability must rest on the actions of the municipality, and not the actions of its employees.  *See Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 690–91; *Fogel*, 531 F.3d at 834.  "Municipal liability may be premised upon: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an

---

[6] The Court notes that Defendants again do not appear to argue that any of the other factors support denial of the motion to amend, nor does the Court find that these other factors (undue delay, bad faith, dilatory motive, or undue prejudice) would support denial of leave to amend here.

1   official with final policymaking authority either delegating that authority to, or ratifying the

2   decision of, a subordinate." *Young v. City of Visalia,* 687 F.Supp.2d 1141, 1147 (E.D.Cal. 2009)

3   (internal citations omitted).

4          A "custom" for purposes of municipal liability is a "widespread practice that, although

5   not authorized by written law or express municipal policy, is so permanent and well-settled as to

6   constitute a custom or usage with the force of law." *See City of St. Louis v. Praprotnik,* 485 U.S.

7   112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *L.A. Police Protective League v. Gates,* 907

8   F.2d 879, 890 (9th Cir. 1990).  Allegations of random acts, or single instances of misconduct,

9   however, are insufficient to establish a municipal custom.  *See Navarro v. Block,* 72 F.3d 712,

10  714 (9th Cir. 1996).  Liability "must be founded upon practices of sufficient duration, frequency

11  and consistency that the conduct has become a traditional method of carrying out

12  policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West,* 223 F.3d

13  1135, 1141 (9th Cir. 2000).  Once the plaintiff has demonstrated that a custom existed, a

14  "municipality may be liable for its custom 'irrespective of whether official policymakers had

15  actual knowledge of the practice at issue.'" *Navarro v. Block,* 72 F.3d 712, 714–15 (9th Cir.

16  1995) (quoting *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir.1989)); *but*

17  *see Blair v. City of Pomona,* 223 F.3d 1074, 1080 (9th Cir. 2000) ("open to the [municipality] to

18  show that the custom was not known to the policy-makers").  A plaintiff "must show that the

19  challenged municipal conduct was both the cause in fact and the proximate cause of the

20  constitutional deprivation." *Young*, 687 F.Supp.2d at 1148.

21         Plaintiff alleges that Defendant Pierce County violated Eighth and Fourteenth

22  Amendment constitutional standards by subjecting him to a severe and persistent backflushing

23  problem and other sewer issues at Pierce County Jail and refusing to provide him with cleaning

supplies to clean and sanitize areas contaminated by wastewater. Construing the allegations in the light most favorable to Plaintiff, he has sufficiently alleged that Defendant Pierce County maintained a custom of allowing the backflushing and sewer issue to continue and refusing to provide cleaning supplies.

Plaintiff alleges that he was incarcerated in the 3 North A unit for approximately seven months and that throughout this time there was a backflushing problem such that when the inmates in other cells flushed their toilet the waste would backflush into the toilet in Plaintiff's cell and that the wastewater would often splash onto the seat of his toilet or onto the floor of his cell. Plaintiff claims that he and other inmates were denied cleaning supplies to sanitize the area contaminated by the backflushing and that he had to clean the contaminated areas of his cell with his own T-shirt.

Plaintiff alleges that he asked various Jail officials, including several individually named Defendants, on numerous occasions to fix the plumbing issue, but that they responded that the issue was structural, that Pierce County was aware of the issue and that it would not be fixed at that time, and that Plaintiff would just have to deal with it. As discussed above, as is the case here, "a backflushing problem, at least when accompanied by a refusal to provide cleaning supplies …, amounts to a violation of Eighth Amendment principles." *Bodnar*, 2014 WL 2737815, at *7–9, *report and recommendation adopted*, 2014 WL 2741070; *Cockcroft,* 548 F.Supp.2d at 774–76.

Plaintiff contends that the backflushing and sanitation problems were the result of a custom or municipal policy. The Court finds Plaintiff has alleged sufficient facts to support a claim that Defendant Pierce County maintained a custom of allowing the backflushing problem while denying cleaning supplies. Specifically, Plaintiff has presented evidence that this was a

prolonged issue at Pierce County Jail, that many inmates were aware of the problem and

complained, and that each member of the staff notified of the problem did essentially nothing to

remedy the situation (or at least nothing legitimately intended to resolve it) and that Plaintiff was

consistently denied cleaning supplies when he requested them.  In fact, according to Plaintiff,

several Jail officials, including several individually named Defendants, acknowledged that this

was a "30-year old problem", that Pierce County would not fix it at that time, and the unit

residents would "just have to deal with it."  Plaintiff further alleges that he was informed by Jail

officials that cleaning supplies were not a policy but a "privilege" for the cluster officers to give

at their disposal and that he was informed on another occasion that Pierce County had no specific

policy requiring the provision of cleaning supplies to inmates.  *Id.*  Plaintiff has alleged sufficient

facts to support a claim that it was the custom to deny cleaning supplies when requested by unit

residents.  The Court finds these allegations are sufficient to indicate that Defendant maintained

a "widespread practice that, although not authorized by written law or express municipal policy,

is so permanent and well settled as to constitute a custom or usage with the force of

law." *Praprotnik,* 485 U.S. at 127.  Plaintiff has also sufficiently alleged that this custom was

the cause-in-fact and legal cause of the alleged constitutional deprivation.

In sum, the Court finds that, whether analyzed under the Eighth Amendment or

Fourteenth Amendment standard, Plaintiff has sufficiently stated a claim in his proposed second

amended complaint against Defendant Pierce County based upon the conditions of his

confinement.  Accordingly, the Court recommends that, with respect to the federal claims against

Defendant Pierce County, Defendants' motion to dismiss should denied and Plaintiff's motion to

amend should be granted.

> d.   *Official Capacity Claims against All Defendants*

Plaintiff also sues all non-entity Defendants in their official capacities.  An action against a municipal officer in an official capacity is equivalent to an action against the local government entity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the government entity itself.").  In their motion to dismiss, Defendants argue that Plaintiff has failed to establish that a policy of the local government entity, Pierce County, caused the constitutional deprivation.  Dkt. 33, at 9-10.  However, as discussed above, the Court has separately concluded that Plaintiff has, in fact, alleged sufficient facts to proceed with his federal claims against the local entity, Pierce County.  Specifically, the Court has concluded that Plaintiff has sufficiently alleged that Pierce County maintained a custom of allowing the backflushing and sewer issue to continue and refusing to provide cleaning supplies, and that this was the cause of the constitutional deprivation Plaintiff alleges.

In the absence of any other specific substantive arguments made by Defendants with respect to Plaintiff's official capacity claims, the Court finds that Plaintiff has arguably stated enough facts to go forward with these claims against all individual Defendants at this time, and the Court cannot conclude that inclusion of these claims in the second amended complaint would be futile.[7]

---

[7] The Court notes that Defendants again do not appear to argue that any of the other factors support denial of the motion to amend, nor does the Court find that these other factors (undue delay, bad faith, dilatory motive, or undue prejudice) would support denial of leave to amend here.

REPORT AND RECOMMENDATION - 31

Accordingly, the Court recommends that Defendants' motion to dismiss be denied and Plaintiff's motion to amend be granted with respect to his official capacity claims against all individual Defendants.

e.    *State Law Claims against All Defendants*

Plaintiff's proposed second amended complaint also alleges new state law claims of negligence, "ministerial negligence", and violation of the Washington State Constitution, against all Defendants.  These claims were not included in Plaintiff's amended complaint and, as such, Defendants did not address them in their motion to dismiss which was directed to the amended complaint.  Defendants oppose Plaintiff's motion to amend to include these claims in the proposed second amended complaint but do so only in a conclusory fashion, primarily based on their position that Plaintiff has failed to state a federal constitutional violation (which the Court has largely rejected), and without addressing the specific requirements necessary to state a claim with respect to these state law claims.  In the absence of any substantive or non-conclusory arguments made by Defendants with respect to Plaintiff's state law claims in opposing Plaintiff's motion to amend, the Court cannot conclude that inclusion of Plaintiff's state law claims would be futile[8] and finds that Plaintiff has arguably stated enough facts to go forward with his state law claims against all Defendants at this time.

Accordingly, the Court recommends that Plaintiff's motion to amend be granted with respect to his state law claims against all Defendants.

//

//

---

[8] The Court notes that Defendants again do not appear to argue that any of the other factors support denial of the motion to amend, nor does the Court find that these other factors (undue delay, bad faith, dilatory motive, or undue prejudice) would support denial of leave to amend here.

1    B.    Motion to Change Venue

2            Defendants also move to change venue to the Tacoma division of the U.S. District Court

3    for the Western District of Washington.  Dkt. 33.

4            Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to

5    a different district or division "[f]or the convenience of parties and witnesses" and "in the

6    interest of justice," so long as the action could have been filed in the transferee district or

7    division in the first instance.  28 U.S.C. § 1404(a); *see Sparling v. Hoffman Construction*

8    *Company, Inc.*, 864 F.2d 635, 639 (9th Cir. 1988) (*citing id.*) (quotation marks omitted).

9    District courts have "broad discretion" in deciding whether to grant a Section 1404(a) motion to

10   transfer venue.  *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir.

11   1979).  The moving party bears the burden to establish that a venue transfer "will allow a case to

12   proceed more conveniently and better serve the interests of justice."  *Rubio v. Monsanto Co.*, 181

13   F. Supp. 3d 746, 759-60 (C.D. Cal. Mar. 24, 2016); *Hunter v. Haar*, No. CV 14-9886 R(JC),

14   2016 WL 11520384, at *1 (C.D. Cal. Dec. 7, 2016).

15           The Court first notes that this case was filed as and is still designated a Tacoma division

16   case but was assigned by the court's random district-wide assignment procedures to a Seattle

17   District Court Judge and Magistrate Judge.  The assignment of a Tacoma division case to Seattle

18   judges, in and of itself, would not appear to serve as a valid basis for a motion to change venue.

19   Even if it did, Defendants fail to show at this juncture that traveling the approximately 35 miles

20   to the Seattle Courthouse, in the event the parties were required to personally appear for a

21   proceeding, would significantly inconvenience to the parties or witnesses, or would otherwise

22   implicate interests of justice concerns.  The Court also notes that there are no proceedings

23   currently scheduled that require the physical appearance of any of the parties nor is it clear at this

1    point whether and when any such in-person proceedings may be required in the future. Thus,

2    any specific concerns about any asserted hardship in traveling to Seattle are better raised at a

3    point in time where such travel might, in fact, be required.

4           Accordingly, Plaintiff's motion to change venue (Dkt. 33) should be denied.

5                                    <u>CONCLUSION</u>

6           The Court recommends that Defendants' motion to dismiss (Dkts. 33, 47) and Plaintiff's

7    motion for leave to file a second amended complaint (Dkt. 53) be GRANTED IN PART and

8    DENIED IN PART. Specifically, with respect to the individual capacity federal constitutional

9    claims against Defendants Sutherlin, Dobson, Herbison, Pearson, and Mastandrea, Defendants'

10   motion to dismiss (Dkts. 33, 47) should be DENIED and Plaintiff's motion to amend (Dkt. 53)

11   should be GRANTED. With respect to the individual capacity federal constitutional claims

12   against Defendants Patti Jackson and Ed Troyer, Defendants' motion to dismiss (Dkts. 33, 47)

13   should be GRANTED, Plaintiff's motion to amend (Dkt. 53) should be DENIED, and these

14   claims should be DISMISSED WITHOUT PREJUDICE. With respect to the federal

15   constitutional claims against Defendant Pierce County, Defendants' motion to dismiss (Dkts. 33,

16   47) should be DENIED and Plaintiff's motion to amend (Dkt. 53) should be GRANTED. With

17   respect to Plaintiff's official capacity claims against all individual Defendants, Defendants'

18   motion to dismiss (Dkts. 33, 47) should be DENIED and Plaintiff's motion to amend (Dkt. 53)

19   should be GRANTED. And, with respect to Plaintiff's state law claims against all Defendants,

20   Plaintiff's motion to amend (Dkt. 53) should be GRANTED. The Court further recommends that

21   Defendants' motion to change venue (Dkt. 33) be DENIED. A proposed order accompanies this

22   Report and Recommendation.

23

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk and

2    served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

3    and Recommendation is signed.  Failure to file objections within the specified time may affect

4    your right to appeal.  Objections should be noted for consideration on the District Judge's

5    motions calendar for the third Friday after they are filed.  Responses to objections may be filed

6    within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter

7    will be ready for consideration by the District Judge on **April 1, 2022**.

8    Dated this 10th day of March, 2022.

9

10

11    _____

12    S. KATE VAUGHAN
      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23